UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

_____

| | |
|---|---|
| LIFE CHURCH OF OAK GROVE, INC. | CIVIL ACTION NO. 18-1167 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| GUIDEONE MUTUAL INSURANCE CO. | MAGISTRATE JUDGE HAYES |

_____

## MEMORANDUM RULING

In the instant case, Plaintiff, Life Church of Oak Grove, Inc., asserts as "its sole cause of action . . . the bad faith violation of La. R.S. § 22:1973." [Record Document 1]. The loss which allegedly gives rise to Plaintiff's bad faith action is the total destruction by fire of a building leased by Plaintiff, owned by the West Carroll Parish School Board, and insured by Defendant, GuideOne Mutual Insurance Company. In the motion before the Court, GuideOne seeks dismissal of Plaintiff's claim because Plaintiff has no insurable interest in the leased immovable property and therefore can have no claim under the Louisiana statute which imposes penalties and damages for bad faith insurance practices. [Record Document 23]. Life Church of Oak Grove opposes the motion. [Record Document 27]. For the reasons discussed below, GuideOne's motion to dismiss [Record Document 23] is **GRANTED**. Life Church's claims are hereby **DISMISSED WITH PREJUDICE**.

## BACKGROUND

Life Church leased property from the West Carroll Parish School Board in Oak Grove, Louisiana. Record Document 1, pp. 2–3. The property included an approximately

1

25,000 square foot building ("the Building") that the School Board agreed to let Life Church convert from an abandoned school into a church. Id. at 2. The lease contained no option to purchase the Building nor any other provisions by which Life Church could obtain an ownership interest in the Building. Life Church procured an insurance policy from GuideOne that covered the Building pursuant to the requirements of the lease. The lease states:

> LESEE [sic] shall be responsible for maintaining fire and hazard insurance on all the school building and premises at fair market values that are acceptable to the school board. LESEE [sic] is also to maintain liability insurance with minimum liability limits of ONE MILLION DOLLARS ($1,000,000.00) insuring the school grounds and premises, and listing the West Carroll Parish School Board as an additional insured on the personal liability insurance policy and shall deliver a copy of the policy to LESSOR.

Record Document 1-2, p. 2. The Policy listed Life Church as a named insured and the School Board as an additional insured. Record Document 1, p. 3.

On March 31, 2016, the Building was completely destroyed by a fire. Id. GuideOne conducted a loss appraisal and on July 19, 2016, issued a check for the replacement value of the building in the amount of the policy limits, $2,611,800, to "Life Church Oak Grove Inc and West Carroll Parish School and Law Offices of Myrt T. Hales, Jr." Id. at 5. GuideOne issued checks in the same amount on two more dates, November 10, 2016, and May 31, 2017. Id. In its state court petition filed in a related matter, Life Church explained that it could not deposit those checks because "[p]ayment received was joint with another party who now has no interest in the funds and who cannot provide an endorsement." Record Document 12-1, p. 1. The Court

2

presumes that Life Church is referring to the School Board as the "party who now has no interest in the funds."

According to Life Church, on March 22, 2018, GuideOne "reversed course" and entered into a settlement agreement with the School Board and the School Board's insurer, Affiliated FM Insurance Company, for $1,305,900, half the value of the Policy. Record Document 1, pp. 5–6. GuideOne did not tell Life Church about its negotiations with the School Board until July 6, 2018, when the settlement was revealed through discovery in the related state court action. Id. Life Church alleges that GuideOne intentionally excluded it from the settlement agreement in order to avoid paying the full amount due under the Policy. Id. at 6.

For its part, GuideOne acknowledges that it stopped payment on the last check it issued to Life Church after learning that the School Board had additional insurance with Affiliated that covered the Building. Record Document 23-1, p. 6. Affiliated and GuideOne then reached an agreement wherein each insurer would pay the School Board fifty percent of the loss. Id. GuideOne admits that it did not pay Life Church for the loss of the Building, but notes that it paid $217,226.39 to satisfy Life Church's claims under the contents coverage provision of the Policy and $64,902.35 in claims for lost business income and extra expenses, including money for things such as office and worship space rent. Id. at 7.

Life Church claims that GuideOne's negotiations with Affiliated and the School Board as well as GuideOne's failure to pay Life Church the replacement cost of the Building caused it to suffer lost earnings, lost profits, loss of goodwill, increased

3

operating costs, declining membership, declining attendance, and financial stress. Record Document 1, p. 6 & 12. Life Church seeks damages for bad faith insurance practices pursuant to Louisiana Revised Statute § 22:1973[1] in the amount of $5,093,600 (twice the replacement value of the Building), pre- and post-judgment interest, attorney's fees, damages for lost earnings, lost profits, lost goodwill and increased operating costs, court costs, and any other relief the Court deems appropriate. Record Documents 1, p. 13; 25-1, p. 27. Life Church's complaint attempts to make it clear that its claim is not for the original loss due to the fire, e.g. the replacement cost of the building, but arises only out of the insurance company's actions in adjusting that claim. Indeed, Life Church notes in its complaint that it has filed a separate suit in state court for the original loss (presumably the Building replacement cost) and that the "State Suit was ongoing prior to the violation for which Plaintiff seeks relief herein." Record Document 1.

## **LAW AND ANALYSIS**

**I.    Legal Standard**

In order to survive a motion to dismiss brought under Rule 12(b)(6), a plaintiff must "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S.

---

[1] Louisiana Revised Statute § 22:1973(A) states that an insurer "owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both." La. R.S. § 22:1973(A). If an insurer breaches this duty, he is "liable for any damages sustained as a result of the breach." Id. On top of general or special damages for breaching the imposed duty, a "claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties . . . shall not be used . . . in computing either past or prospective loss experience for . . . setting rates or making rate filings." Id. § 22:1973(C).

4

662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The Court must accept as true all of the factual allegations in the complaint in determining whether a plaintiff has stated a plausible claim. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). If a complaint cannot meet this standard, it may be dismissed for failure to state a claim upon which relief can be granted. Iqbal, 556 U.S. at 678–79. A court does not evaluate a plaintiff's likelihood for success, but instead determines whether a plaintiff has pleaded a legally cognizable claim. U.S. ex rel. Riley v. St. Luke's Episcopal Hosp., 355 F.3d 370, 376 (5th Cir. 2004). A dismissal under 12(b)(6) ends the case "at the point of minimum expenditure of time and money by the parties and the court." Twombly, 550 U.S. at 558.

## II.  Analysis

### A.  Life Church's Insurable Interest

The outcome of this case turns upon whether Life Church has an insurable interest in the Building, separate and apart from its contents, lost business income, and extra expenses. That is, as is discussed below, Louisiana Revised Statute § 22:1973 requires a claimant to have an insurable interest in any property for which it asserts

5

bad faith adjustment. To be clear, in discussing whether Life Church has an insurable interest in the Building, the Court is considering whether Life Church has an insurable interest in the immovable property alone.[2]

GuideOne contends that Life Church does not have an insurable interest in the Building because the School Board owns the Building and Life Church was merely the lessee. Record Document 23-1, p. 5. GuideOne asserts that the extent of Life Church's insurable interest under the Policy is in the contents of the Building and lost business income, for which it has already been paid. Id. at 7 & 11. In response, Life Church asserts that it has a more substantial economic interest in the Building than the School Board because it made significant material improvements to the Building, invested "large sums" of money and labor, and procured the Policy in order to protect its investment and financial interests. Record Document 27, p. 17. In order to evaluate these claims, the Court begins by exploring the language of § 22:1973 and the concept of an insurable interest under Louisiana law.[3]

      1.    <u>Louisiana Insurance Law</u>

First, the explicit language of § 22:1973 limits claims to the "insured":

> An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

---

[2] Life Church <u>did</u> have an insurable interest in the Building contents, the church's lost business income, and extra expenses, for which Life Church has been paid. The complaint contains no allegations that the adjustment of these claims was in bad faith.

[3] Because this case is based on diversity jurisdiction, the Court must apply the substantive law of the forum state, here Louisiana. Holt v. State Farm Fire & Cas. Co., 627 F.3d 188, 191 (5th Cir. 2010) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

La. R.S. § 22:1973(A) (emphasis added).

In this case, Life Church is the named insured on the GuideOne policy, which provided general liability and hazard and property insurance. But an insured can only recover up to its insurable interest in the property. Louisiana Revised Statute § 22:853(A) states: "[n]o contract of insurance on property or of any interest therein or arising therefrom shall be enforceable except for the benefit of persons having an insurable interest in the things insured." Id. § 22:853(A).

The same statute defines an insurable interest as "any lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage." Id. § 22:853(B). In other words, "[i]f the loss of the insured property does not expose the insured to either direct, immediate or potential financial loss or liability, the insured does not have an insurable interest." Armenia Coffee Corp. v. Am. Nat. Fire Ins. Co., 2006-0409 (La. App. 4 Cir. 11/21/06); 946 So. 2d 249, 254. Louisiana courts have stated that "[t]he great weight of authority recognizes that an interest in the property protected is essential to the existence of a valid insuring agreement." Barham v. USAA Cas. Ins. Co., 49,121 (La. App. 2 Cir. 6/25/14); 144 So. 3d 1166, 1170 (citing Rube v. Pac. Ins. Co. of N.Y., 131 So. 2d 240 (La. Ct. App. 1961)). While Louisiana courts have held that "an ownership interest is not necessary for an insured to have an insurable interest in the property," Life Church's interest in the Building falls short of an insurable interest for the reasons discussed below. Id. at 1171.

Regarding the payment of losses under an insurance policy, Louisiana is known as a "valued policy" state. A valued policy is one that "specifies the value of the property insured, and thereby fixes the specific amount to be paid . . . , at least in the event of total loss." 15 La. Civ. L. Treatise, Ins. Law & Practice § 10:27 (4th ed.). This requirement "protects an insured from getting less than what he has paid for by prohibiting the insurer from contesting the value of the property after once fixing the value for the purpose of calculating premiums." Id. This concept has been codified as to fire insurance policies at Louisiana Revised Statute § 22:1318(A). But, this statute limits recovery under a valued policy by stating that "[t]he liability of the insurer of a policy of fire insurance, in the event of total or partial loss, shall not exceed the insurable interest of the insured in the property unless otherwise provided for by law." La. R.S. § 22:1318(C). Furthermore, the statute provides that "[n]othing in this Section shall be construed as to preclude the insurer from questioning or contesting the insurable interest of the insured," as GuideOne has done in this case. Id.; see Barham, 144 So. 3d at 1171. Accordingly, under Louisiana law, Life Church cannot collect the full value of the Policy if it has no insurable interest in the Building, regardless of GuideOne's actions in adjusting the claim and in settling with the School Board.

2. Application

The Court finds that Life Church does not have an insurable interest to support its claims against GuideOne for bad faith under the Louisiana statute. In this case, all parties admit that the School Board was the owner of the Building. At no point does Life Church assert that it acquired an ownership interest in the Building, nor does it

assert that it had a written option to purchase the Building or other written agreement by which it could obtain an ownership interest. Thus, the School Board is entitled to the insurance proceeds for the destruction of the Building because a party who is merely a lessee when property is destroyed "has no interest in the property, or in the insurance which insures the property absent a specific clause in an agreement between the parties." Gayle v. Commercial Union Assurance Co., 98 So. 2d. 604, 606 (La. Ct. App. 1981).

Life Church argues that its status as a lessee of the Building is not determinative because something less than ownership can create an insurable interest. Record Document 27-1, p. 12. While this broad statement is correct legally, Life Church's interest in the property does not rise to the level required by law to create a non-owner's insurable interest. Life Church cites Haddad v. Elkhateeb, 2010-0214 (La. App. 4 Cir. 8/11/10); 46 So. 3d 244, to support its position. In Haddad, a lessee had an insurable interest in "business personal property," such as coolers, shelves, and cash registers, which he used to run a supermarket and which were destroyed or damaged after a hurricane. Id. at 248 & 252. The court found that the lessee was entitled to the insurance proceeds from a policy in his name covering that property because he "used and depended upon each and every item of lost and/or damaged business personal property located in the store in the daily operation of the supermarket." Id. at 252. The court found that the lessee "had a significant and substantial economic interest" in preserving the damaged property because he was subject to pecuniary loss without it. Id.

Despite Life Church's assertions, Haddad does not support its position in the instant case. In Haddad, the lessee did not recover insurance proceeds for the leased building where the supermarket was located, but only for the items contained within that building that were used to run his business. Similarly, although Life Church has not been paid for the loss of the Building itself, it has recovered insurance proceeds for the value of the contents of the Building that it used to perform its operations as a church. Record Document 23-1, p. 7. GuideOne also compensated Life Church for business expenses and lost income to offset the pecuniary losses caused by not being able to use its regular worship space. Id. Therefore, although Haddad demonstrates that a lessee can have an insurable interest, this case does not support Life Church's position because GuideOne has already paid Life Church for its insurable interest under the Policy. In fact, Haddad bolsters the Court's conclusion that Life Church does not have an insurable interest in the Building.

In further support of its argument that it has an insurable interest in the Building, Life Church states that it "intended to protect its investment when it procured the fire insurance policy as it had significant financial interest in the preservation of business facilities." Record Document 27-1, p. 17. Although this statement indicates that Life Church chose to procure this insurance, the lease required Life Church to insure the Building. The lease stated that Life Church was to maintain fire and hazard insurance for the Building and its premises at "fair market values that are acceptable to the [S]chool [B]oard." Record Document 1-2, p. 2. Additionally, Life Church was obligated to maintain liability insurance with a minimum limit of $1,000,000.00 and list

the School Board as an additional insured. Id. Such provisions are common in lease agreements and are part of the lease consideration. While acknowledging this requirement, Life Church states that it insured the Building "for more than its fair market value so it could be replaced if destroyed." Record Document 27-1, p. 14. However, Life Church's reasons for procuring insurance in a certain amount do not impact its insurable interest in the Building. If this were not the case, the requirement that a party have an insurable interest to enforce an insurance contract would be rendered meaningless. Life Church may not circumvent the necessity of an insurable interest by procuring a level of coverage higher than the fair market value.

In attempting to establish an insurable interest, Life Church makes several references to improvements it made to the Building. Record Document 1, p. 2. Life Church appears to contend that these improvements give it an insurable interest in the Building. Record Document 27-1, p. 17. Based on the terms of the lease between Life Church and the School Board, the Court disagrees. The lease states that Life Church "shall be responsible for all maintenance and upkeep of the premises, including any heating, air conditioner or structural repairs." Record Document 1-2, p. 2. The lease further provides that, upon termination, "[lessee] shall yield up and return to [lessor], the said premises and all the said building, improvements and facilities in as good condition as when received by [lessee] . . . ." Id. Under these terms, any structural improvements that could be categorized as "maintenance and upkeep" were required under and anticipated by the lease. Furthermore, all structural improvements were required to be returned to the School Board at the end of the lease. Because any

11

structural improvements made by Life Church belong to the School Board, any loss or damage to those improvements would not expose Life Church to "direct, immediate or potential financial loss or liability." Armenia Coffee Corp., 946 So. 2d at 254. As such, Life Church does not have an insurable interest in any structural improvements it made to the Building.

Life Church also refers several times to its belief that it would eventually come to own the Building and states that it had an "understanding that the property would be conveyed and/or transferred to Life Church." Record Document 27-1, p. 5. Presumably, Life Church believes that this understanding gives it an insurable interest in the Building. This belief is incorrect. First, this alleged understanding is not contained in the lease. See Record Document 1-2. Second, Life Church has not produced a separate document reflecting this understanding nor does it allege that this "understanding" was ever reduced to writing. Without a writing, any agreement Life Church may have had with the School Board regarding the Building is not legally binding. The Louisiana Civil Code dictates that "[a] transfer of immovable property must be made by authentic act or by act under private signature." La. Civ. Code art. 1839; see also E. Tangipahoa Dev. Co., LLC v. Bedico Junction, LLC, 2008-1262 (La. App. 1 Cir. 12/23/08); 5 So. 3d 238, 244 ("Agreements relating to the transfer of or option to purchase immovable property must be in writing in a form prescribed by LSA-C.C. art. 1839."). Therefore, any unwritten agreement that the School Board would eventually transfer the Building to Life Church does not give Life Church an insurable interest in the Building.

12

Even if the lease did contain an option to purchase the Building, such option would not necessarily give Life Church an insurable interest in the Building. In Gayle v. Commercial Union Assurance Company, the court determined that the property owner, not the lessee, was entitled to the insurance proceeds after the property was destroyed by a fire, even though the lessee exercised an option to purchase the property after the fire. 98 So. 2d. at 606. In reaching this conclusion, the court stated that "the relationship between the parties was that of lessor/lessee at the time the fire occurred." Id. The court observed that "[t]he great weight of authority in other jurisdictions is that when an option [to purchase] is not exercised until after the premises are damaged, the insurance proceeds belong to the lessor." Id. at 605–06. This is because a person who does not yet own the property "has no interest in the property, or in the insurance which insures the property absent a specific clause in an agreement between the parties." Id. at 606.

Despite Life Church's belief to the contrary, it does not have an insurable interest in the Building. None of Life Church's arguments in support of its position—that it intentionally procured fire insurance in an amount above the Building's fair market value, made improvements to the Building, and had an understanding with the School Board that it would eventually own the Building—can demonstrate an insurable interest. As such, Life Church has no basis upon which to enforce its Policy with GuideOne nor therefore to demand damages for alleged bad faith actions by the insurer. See La. R.S. § 22:853(A).

### B.     GuideOne's Rights under the Policy

Without an insurable interest in the Building, Life Church has no cause of action based on GuideOne's settlement with the School Board. However, because Life Church has couched its claim for the replacement value of the Building as arising from the bad faith adjustment of an insurance claim, the Court will address GuideOne's rights under the Policy. The Court finds that the Policy explicitly allowed GuideOne to settle losses with the School Board instead of Life Church. Under Louisiana law, "[a]n insurance policy is a contract between the insured and insurer and has the effect of law between them." Gorman v. City of Opelousas, 2013-1734 (La. 7/1/14); 148 So. 3d 888, 892. When interpreting an insurance contract, the court is "to ascertain the common intent of the insured and the insurer as reflected by the words in the policy." Peterson v. Schimek, 98-1712 (La. 3/2/99); 729 So. 2d 1024, 1028. If the words of an insurance contract are "clear and explicit and lead to no absurd consequences, courts must enforce the contract as written and may make no further interpretation in search of the parties' intent." Id. Thus, the Court must enforce the Policy as written if its terms are clear.

Turning to the language of the Policy, it states that GuideOne "may adjust losses with the owners of lost or damaged property if other than you." Record Document 23-2, p. 47. The Policy goes on to say that if GuideOne pays the owners, "such payments will satisfy your claims against us for the owners' property" and that GuideOne "will not pay the owners more than their financial interest" in the Building. Id. Life Church argues that GuideOne violated this provision by paying the School Board

more than its financial interest but does not dispute the fact that the Policy explicitly allows GuideOne to settle losses with the School Board, the owner of the Building. See Record Document 27-2, pp. 17–18.

Moreover, the Policy states that if there is other insurance covering the same loss or damage, GuideOne will pay only for the amount of covered loss or damage "in excess of the amount due from that other insurance." Record Document 23-2, p. 56. Accordingly, the Policy allowed GuideOne to negotiate with Affiliated. Despite Life Church's attempts to paint GuideOne's negotiations with the School Board and Affiliated as a sinister and unethical plot to save money at Life Church's expense, the Policy provided that GuideOne could take the actions that it did. The Court finds that the language of the Policy clearly and explicitly allowed GuideOne to settle with the School Board, negotiate with Affiliated, and only pay its share of losses.

## **CONCLUSION**

In this case, Life Church alleges that GuideOne's conduct constituted a bad faith adjustment of the insurance claim for the replacement cost of the Building and seeks penalties and damages under § 22:1973. However, Life Church's lack of an insurable interest in the Building precludes it from asserting a claim for bad faith adjustment. Additionally, the Policy allowed GuideOne to negotiate with Affiliated and settle with the School Board. For these reasons, the Court finds that Life Church has failed to plead a legally cognizable claim that GuideOne acted in bad faith under § 22:1973 when it settled with the School Board. St. Luke's Episcopal Hosp., 355 F.3d at 376. Thus, Life Church has no cause of action against GuideOne, and GuideOne's motion to dismiss for

failure to state a claim [Record Document 23] is **GRANTED**. Life Church's claims are hereby **DISMISSED WITH PREJUDICE**.

A judgment consistent with the instant memorandum ruling will issue separately.

**THUS DONE AND SIGNED** this _23rd_____ day of September, 2020.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE